Per Curiam.
Appeal from an order and judgment of the Supreme Court (McDonough, J.), entered September 26, 2014 in Albany County, which dismissed petitioners’ application, in a proceeding pursuant to Election Law § 16-104, to, among other things, compel the New York State Board of Elections and the *1161 Greene County Board of Elections to place the names of petitioners on a separate row or column with other candidates nominated by the independent body known as the Stop Common Core Party for certain public offices on the ballot for the November 4, 2014 general election.
Petitioners, John Cahill, Robert Antonacci and Joseph Stanzione, are candidates for the public offices of Attorney General, Comptroller and Greene County District Attorney, respectively. Petitioners have secured the nominations of the Republican and Conservative Parties, as well as the nomination of the Stop Common Core Party, which is an independent body (see Election Law § 1-104 [3], [12]). The Stop Common Core Party also nominated Rob Astorino and Chris Moss for the public offices of Governor and Lieutenant Governor, respectively.
Pursuant to Election Law § 7-104 (4) (c), the name of a candidate that has been nominated by two or more major parties “shall appear only in each row or column containing generally the names of candidates for other offices nominated by . . . such part[ies]” (emphasis added); the candidate is not entitled to an additional row or column under the emblem of an independent body. Rather, the independent body’s name may appear in the voting square associated with the candidate on one of the political parties’ ballot lines (see Election Law § 7-104 [4] [c]). An exception to this rule is set forth in Election Law § 7-104 (5), which provides that “the name of a person who is nominated for the office of governor, or state senator, or member of assembly, shall appear on the ballot as many times as there are parties or independent bodies nominating him or her.” Thus, here, the Stop Common Core Party candidates for Governor and Lieutenant Governor will appear on row I of the ballots for counties outside of New York City, next to the Stop Common Core Party’s name and emblem. In contrast, petitioners’ names are not listed on the line for the Stop Common Core Party; rather, they are listed only on the two party lines for which they were nominated, with the words “Stop Common Core” above their names on the Conservative row on the ballot.[1] Moreover, the record before us includes a proposed ballot indicating that, due to the number of independent bodies nominating candidates for the gubernatorial election, row I would be shared between *1162 the Stop Common Core Party and another independent body, the Rent is 2 Damn High Party. The latter body nominated a candidate for Comptroller who has not been nominated by any major party and, thus, his name appears on row I of the proposed ballot for the column under “Comptroller” — with the words “Rent is 2 Damn High” printed above his name — pursuant to Election Law § 7-104. The space for Attorney General is simply left blank.[2]
Petitioners commenced this proceeding seeking a declaration that Election Law § 7-104 (4) (c) is unconstitutional as applied to them because it violates their rights to freedom of speech and association guaranteed by the 1st and 14th Amendments of the US Constitution. Although petitioners did not dispute that respondents complied with section 7-104 (4) (c), they asserted that strict enforcement of that provision creates a patchworked and illogical ballot that promotes voter confusion, makes it more difficult for Stop Common Core Party supporters to locate petitioners, and impinges upon petitioners’ right to associate and express themselves as a party slate of candidates who share common ideals. Petitioners further sought to compel respondents to place their names on the Stop Common Core Party line.[3] As they do in their submissions to this Court, certain respondents argued that the petition should be dismissed, while others took no position or requested that Supreme Court grant the petition to bring clarity to the general election ballot. Supreme Court dismissed the petition, prompting this appeal.
Petitioners argue that there is no rational basis for Election Law § 7-104 to afford candidates for certain offices — Governor, Senator, and Member of the Assembly — the right to unlimited ballot lines, while denying that right to all other candidates. Inasmuch as the Stop Common Core Party line is required to be on the ballot by virtue of that body nominating a candidate for Governor (see Election Law § 7-104 [5]), petitioners assert that Court of Appeals precedent requires that their names also be *1163 placed on that line to prevent “unnecessary discrimination between the independent [body voter] and the party voter in respect of the facilities offered . . . for a prompt and intelligent and ready expression of his [or her] choice” (Matter of Crane v Voorhis, 257 NY 298, 304 [1931]). Petitioners are correct that an older line of Court of Appeals cases held that where a “strict observance of the letter of” a predecessor statute to section 7-104 “would interfere unnecessarily with the intelligent and ready expression of . . . choice by an independent voter,” the statute could not constitutionally be applied as written (Matter of Belford v Board of Elections of Nassau County, 306 NY 70, 73 [1953] [internal quotation marks and citation omitted]; see Matter of Aurelio, 291 NY 176, 180-181 [1943]; Matter of Crane v Voorhis, 257 NY at 301-304; Matter of Callaghan v Voorhis, 252 NY 14, 16-18 [1929]). Particularly where a line for an independent body was required to be on the ballot, the Court of Appeals found that “the voter is very apt to be deceived, misled or confused in voting along the line by finding a blank for a particular office, the name of the nominee for that office having been placed on another party line or column” (Matter of Callaghan v Voorhis, 252 NY at 17). The Court concluded that the predecessor statutes could not be constitutionally enforced because, in that instance, its application “would be unfair and prejudicial to a particular class of voters” (id. at 18; see Matter of Crane v Voorhis, 257 NY at 301-304).
Subsequently, however, the Court of Appeals overruled that line of cases (see Matter of Button v Donohue, 18 NY2d 792, 793 [1966]; Matter of Battista v Power, 16 NY2d 198, 201-202 [1965]; see also Matter of Hentel v Power, 18 NY2d 834, 835 [1966]). The Court also stated that the prior version of the statute— which is not meaningfully distinct from the present version before us (see Election Law former § 248) — “is clear and constitutional” (Matter of Button v Donohue, 18 NY2d at 793). Addressing its prior cases in Matter of Crane v Voorhis (supra) and Matter of Callaghan v Voorhis (supra), which found a strict application of the statute to be unfair and prejudicial in cases similar to this one, the Court stated that “ ‘[u]nfair and prejudicial’ must mean something beyond detriment or inconvenience since the Legislature itself has said that fairness calls for the prohibition of a third column” to candidates nominated by independent bodies when those candidates already appear on the ballot as the nominees of two or more major parties (Matter of Battista v Power, 16 NY2d at 201). The Court clarified that “[t]he kind of unfairness and prejudice which would make the section unconstitutional as to a particular group must be of such character as to deprive that group of proper representation *1164 on the voting machine or otherwise make it practically impossible for the members of that group to vote as such” (id.).
In our view, Matter of Battista v Power (supra) is controlling, particularly after the Court of Appeals expressly indicated that it had overruled the last of the prior, inconsistent line of cases (see Matter of Button v Donohue, 18 NY2d at 793). Under Battista, Election Law § 7-104 (4) (c) is not unconstitutional as applied to petitioners — their names appear twice on the ballot in separate major party lines and the ballot further designates them as candidates of the Stop Common Core Party, albeit in a less prominent fashion than they seek (see Matter of Battista v Power, 16 NY2d at 202-203 [Burke, J., concurring]; see also Gonsalves v New York State Bd. of Elections, 974 F Supp 2d 191, 199 [2013]). In that regard, the United States Supreme Court has held that denying an individual, who otherwise is on the ballot, the right to “appear on the ballot as a particular party’s candidate does not severely burden that party’s associational rights” (Timmons v Twin Cities Area New Party, 520 US 351, 359 [1997]; accord Gonsalves v New York State Bd. of Elections, 974 F Supp 2d at 199). Absent a severe burden on 1st and 14th Amendment rights, an election law regulation need not be narrowly tailored to advance a compelling state interest; rather, the state’s regulatory interests must be sufficient to justify the burden imposed by the regulation (see e.g. Gonsalves v New York State Bd. of Elections, 974 F Supp 2d at 198). The legitimate state interest underlying Election Law § 7-104 was identified by the Court of Appeals in Battista as “a continuing legislative policy of preventing the major party candidates from pre-empting the whole ballot through the device of setting up independent political bodies” (Matter of Battista v Power, 16 NY2d at 201). Inasmuch as that state interest outweighs the burdens imposed on petitioners’ rights, the statute cannot be deemed unconstitutional as applied (see id.).
Although petitioners argue that Matter of Battista v Power (supra) and Gonsalves v New York State Bd. of Elections (supra) are distinguishable on their facts because the Stop Common Core Party is required to be given its own line on the ballot by virtue of its nomination of a candidate for Governor, we note that the Court of Appeals has held that Battista governed in a case in which “a separate line [was] reserved on the ballot for those candidates nominated for various offices by [an] independent” body, but the ballot had “a blank space where the names of [the petitioner] nominees would otherwise appear” as a result of the dictates of Election Law § 7-104 (Matter of Kiley v Coveney, 84 AD2d 585, 585 [1981, Mangano, J., concurring], affd for *1165 reasons stated below 55 NY2d 866 [1982]; but see Credico v New York State Bd. of Elections, 751 F Supp 2d 417, 422-423 [2010]; Matter of Sherwood v New York State Bd. of Elections, 17 Misc 3d 922, 925-926 [2007]). Similarly Gonsalves is on point in that, as in the instant case, the independent body therein nominated candidates entitled to have their names printed in a separate row on the ballot for that independent body (see Gonsalves v New York State Bd. of Elections, 974 F Supp 2d at 202). Moreover, while Battista was decided in the “lever machine era prior to 2010” and the Court expressed its concern that to allow an additional independent body line would compromise the limited space available on the lever machine, the Court’s decision was not based upon a finding that the space concerns constituted a legitimate state interest, as petitioners assert (see generally Gonsalves v New York State Bd. of Elections, 974 F Supp 2d at 201). Rather, the Court considered limited space on the voting machine to be only an additional “circumstance[ ] of the case” (Matter of Battista v Power, 16 NY2d at 201) and, as noted above, concluded that the legitimate state interest that justified restrictions imposed by the statute was the prevention of “the major party candidates from pre-empting the whole ballot through the device of setting up independent political bodies” (id.). This interest is directed toward ballot integrity, rather than space concerns, inasmuch as without the limitation contained in Election Law § 7-104 (4) (c), the statute “would allow for a near-unlimited number of independent parties and ballot lines, with ballots in New York being filled with the names of each major party candidate repeated numerous times, [and] each major party trying to place its candidate on the ballot in one more row than another major party’s candidate,” thereby sowing confusion (Gonsalves v New York State Bd. of Elections, 974 F Supp 2d at 201).
Finally, petitioners’ assertion that there is no rational basis to afford some candidates for offices the right to unlimited ballot lines while denying the same to other candidates must be rejected. The Election Law is structured such that party votes for Governor or Member of the Assembly are used to apportion representation among members of county committees (see Election Law § 2-104 [1]) and that an independent body may become a political party if it receives at least 50,000 votes for its candidate for Governor (see Election Law § 1-104 [3]). If the independent body ballot positions were merged with party positions for that office, it would not be possible to determine the party vote for apportionment purposes or the number of votes that the independent body had received for its candidate for Governor. To the extent that petitioners argue herein that their *1166 ability to achieve party status is hindered by the ballot configuration required by Election Law § 7-104 (4) (c), their argument is unpreserved for our review. Petitioners also failed to preserve their contention that cases of the Second Department relying upon Battista (see e.g. Matter of Pocchia v DeFrancesco, 166 AD2d 736, 736 [1990], lv denied 76 NY2d 711 [1990]) need no longer be followed because Election Law § 7-106 — which applies to paper ballots — is the applicable section, rather than section 7-104. Indeed, petitioners conceded in their petition that section 7-104 governs the form of the voting ballots at issue here. In any event, this Court has previously rejected the assertion that section 7-106 abrogated the requirements set forth in section 7-104 (see Matter of Guidarelli v Brassard, 88 AD3d 1147, 1149 [2011]).
In short, controlling Court of Appeals precedent mandates a conclusion that Election Law § 7-104 (4) (c) is not unconstitutional as applied to petitioners and Supreme Court properly dismissed the petition.
Stein, J.P., Garry, Rose, Lynch and Devine, JJ., concur.
Ordered that the order and judgment is affirmed, on the law, without costs, and it is declared that Election Law § 7-104 (4) (c) has not been shown to be unconstitutional.

. Ballots within New York City are configured differently, but — as in the rest of the state — the Stop Common Core Party’s candidates for Governor and Lieutenant Governor are provided with their own voting squares identifying them as such, while Cahill and Antonacci are identified as the Stop Common Core Party candidates only by virtue of that body’s name appearing in the voting squares reflecting their Conservative Party nomination.

. While it was represented at oral argument that the Rent is 2 Damn High Party has been removed from row I, petitioners indicate in their brief that the ballot has been changed so that another independent body, the Libertarian Party, currently shares row I. The record before us indicates that the Libertarian Party has also nominated candidates for the offices of both Comptroller and Attorney General that have not secured the nominations of any other party. Thus, under Election Law § 7-104, those candidates would appear in the shared row I with the word “Libertarian” above their names for the Comptroller and Attorney General columns. Petitioners’ names would remain off row I.

. Inasmuch as petitioners challenge the constitutionality of a statute, they provided notice to the Attorney General (see CPLR 1012 [b] [1]; cf. Matter of Guidarelli v Brassard, 88 AD3d 1147, 1149 [2011]).